IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| RICHARD AMOS WEBER, | ) | |
| | ) | CASE NO. BK07-82354-TJM |
| Debtor(s). | ) | A08-8012-TJM |
| STRUCTURED INVESTMENTS CO., L.L.C., | ) | |
| | ) | |
| Plaintiff, | ) | CH. 13 |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD A. WEBER, | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

This matter is before the court on the debtor-defendant's motion for summary judgment (Fil. #24) and resistance by the plaintiff (Fil. #31). David G. Hicks represents the debtor-defendant, and T. Randall Wright, Jon E. Blumenthal and Stacey L. Hines represent the plaintiff. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

This adversary proceeding was filed to determine the parties' respective interests in monthly pension payments. Mr. Weber, the debtor, retired from the United States Navy at the enlisted rank of Petty Officer First Class. He receives a military pension payment of $1,076.00 each month. In November 2005, he signed an "annuity utilization agreement" ("the contract") with Structured Investments Co., L.L.C. ("SICo"), which expressly states that it is not a loan, but the result was that Mr. Weber received a lump sum of $41,923.38 in exchange for transferring his rights to 96 of his periodic pension payments to SICo. The contract also contains a default clause pursuant to which the number of payments due increases to 120 "[i]f there is any disruption, interruption, decrease or elimination of those payments caused by the participant, or by participant's failure to take reasonable steps to insure the remittance of such payments[.]" Ex. A to Compl. ¶ 2.2 (Fil. #1). The contract also requires the assignment of life insurance to SICo and the debtor's acquiescence in SICo's monthly withdrawal of the insurance premiums from the debtor's bank account.

For more than a year, Mr. Weber made the payments as required. In March 2007, he made a partial payment to SICo and has not made any payments since that time. He filed a Chapter 13 bankruptcy proceeding in November 2007. SICo then filed this adversary proceeding asserting that Mr. Weber's pension payments cannot be used to fund his plan of reorganization because SICo holds a superior interest in those payments as a result of the terms of the contract. SICo also alleged

that Mr. Weber has converted the payments to his own use. Mr. Weber has now moved for summary judgment, arguing that he is entitled to judgment as a matter of law because the purported assignment of his pension payments is void.

The parties agree on the following facts:

1. Mr. Weber is a debtor in the above-captioned Chapter 13 bankruptcy case pending in the United States Bankruptcy Court for the District of Nebraska.

2. SICo is a limited liability company, organized and existing under the laws of the State of California.

3. Prior to November 15, 2005, Mr. Weber was the legal recipient of monthly pension payments in the amount of approximately $1,076.00.

4. On November 15, 2005, a date prior to the filing of Mr. Weber's bankruptcy case, SICo and Mr. Weber entered into an annuity utilization agreement ("the contract").

5. Pursuant to the contract, SICo paid $41,923.38 as a lump sum payment to Mr. Weber on November 21, 2005.

6. In exchange for the lump sum payment, Mr. Weber sold or assigned 96 payments of $1,076.00 of his monthly pension payments to SICo and agreed to pay these monthly payments in the name of SICo into a designated account ("the assignment account").

7. If there was a decrease, interruption, or disruption in a monthly payment caused by Mr. Weber, the contract required him to make 120 monthly payments.

8. Mr. Weber's March 2007 periodic payment was incomplete. Instead of remitting the contracted and agreed-upon periodic payment of $1,076.00, Mr. Weber submitted a payment of $1,000.50 to the assignment account.

9. Since March 2007, Mr. Weber has not made any monthly payments to SICo or to the assignment account.

10. Since March 2007, Mr. Weber has continued to receive his monthly pension payments.

11. Pursuant to the contract, Mr. Weber agreed to sell or assign the monthly payments to SICo.

12. Mr. Weber has not confirmed a plan. The objections to confirmation filed by SICo and the Chapter 13 trustee were sustained and the debtor is to file an amended plan in late April 2009.

    13.    Mr. Weber made 15 full payments to SICo of $1,076.00 each and one partial payment of $1,000.50 in March 2007.

    14.    Mr. Weber is retired from active duty military.

    15.    SICo's proof of claim is in the amount of $111,979.50.

The debtor argues that the assignment of military pay is prohibited by statute and, accordingly, numerous courts across the country have voided the type of arrangement entered into by the parties here. The applicable statute is 37 U.S.C. § 701, which is in the title of the United States Code concerning allotments and assignments of pay of the uniformed services. Section 701 states in relevant part:

> § 701. Members of the Army, Navy, Air Force, and Marine Corps; contract surgeons
>
> (a) Under regulations prescribed by the Secretary of the military department concerned, a commissioned officer of the Army, Navy, Air Force, or Marine Corps may transfer or assign his pay account, when due and payable.
> . . . .
> (c) An enlisted member of the Army, Navy, Air Force, or Marine Corps may not assign his pay, and if he does so, the assignment is void.
> . . . .

Military retirement benefits are considered pay. Barker v. Kansas, 503 U.S. 594, 605 (1992) (ruling that, for state tax purposes, military retirement pay is deferred pay for past services rather than current pay for reduced services). The issue is whether the annuity utilization agreement constitutes an assignment of the pay, and if so, what effect that has.

There have been several bankruptcy cases involving similar SICo contracts and military payments. See, e.g., Structured Inv. Co. v. Webb (In re Webb), 376 B.R. 765 (Bankr. W.D. Okla. 2007) (summary judgment was granted in debtor's favor on nondischargeability complaint because contract assigning military retirement benefits was unenforceable); Structured Inv. Co. v. Vincent (In re Vincent), Adv. No. S-051133, 2006 WL 4452998 (Bankr. D. Nev. Jan. 25, 2006) (in this dischargeability proceeding, the court ordered additional briefing on, *inter alia*, the enforceability of the annuity utilization contract); Bowden v. Structured Inv. Co. (In re Bowden), 315 B.R. 903 (Bankr. W.D. Wash. 2004) (holding that the asset utilization agreement did not create a trust res because the debtor had no property right to future pension and benefit payments, so he could not transfer them to SICo); Structured Inv. Co. v. Price (In re Price), 313 B.R. 805 (Bankr. E.D. Ark. 2004) (holding on a summary judgment motion in a dischargeability case that the annuity utilization agreement appeared to be a loan transaction secured by a prohibited assignment of the debtor's pension benefits, but a trial was necessary on the debtor's defenses to the contract).

The Price and Webb cases are the only two of the preceding cases to address the issue of whether the contract's purpose was legal. The payment arrangements in Price and Webb and in the present case appear to be similar: the debtor directed the government to deposit his monthly pension check into an account he opened at a bank designated by SICo. Withdrawals from the account could be made via the signatures of two of the following three people – the debtor and two SICo designees. In this manner, SICo was assured of obtaining the funds soon after they were deposited in the account.

However, the Price court, without extensive discussion, seems to have assumed that such an arrangement was an assignment and thus prohibited by 37 U.S.C. § 701 on the basis that the purpose of the anti-assignment provision is to prevent the embarrassment or possible compromise of military personnel who assign future pay. 313 B.R. at 810 (citing 6A C.J.S. Assignments § 26 (1975)). See also Dorfman v. Moorhous (In re Moorhous), 108 F.3d 51 (4th Cir. 1997). The Webb court followed the Price conclusion.

In the case at bar, it is not clear that the payment arrangement is an assignment. In fact, SICo appears to have gone to great lengths to configure the contract in such a way to avoid running afoul of this and other legal prohibitions. In comparing the language of the contract in this file to the language of similar SICo contracts in other cases, one may conclude that SICo took each adverse ruling to heart and altered the contract accordingly.

The outcome here hinges on whether the debtor "assigned" his payments to SICo. California law governs the contract. Ex. A to Compl. ¶ 16 (Fil. #1). An assignment is a transfer of property or some right or interest therein from one person to another. Noble v. Draper, 73 Cal Rptr. 3d 3, 12 (Cal. Ct. App. 2008); O'Donnell v. Weintraub, 67 Cal. Rptr. 274, 279 (Cal. Ct. App. 1968). By its language, 37 U.S.C. § 701(c) prohibits recipients of military pay such as Mr. Weber from assigning what they are due from the government to anyone else. Logically, that prohibition ends when the funds have been distributed to the recipient, in this case, Mr. Weber. What the recipient chooses to do with the funds thereafter is not governed by Section 701. In other words, the anti-assignment statute applies to the transaction between the government and the debtor. When the monthly payment has been deposited in Mr. Weber's bank account, the transaction is concluded and the government has no further control over Mr. Weber's disposition of those funds. For that reason, 37 U.S.C. § 701(c) does not invalidate the contract Mr. Weber entered into with SICo.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In ruling on a motion

for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. Hitt v. Harsco Corp., 356 F.3d 920, 923-34 (8th Cir. 2004).

Because the annuity utilization agreement is not void under the anti-assignment provisions of 37 U.S.C. § 701(c), the debtor's motion for summary judgment must be denied.

IT IS ORDERED: The debtor-defendant's motion for summary judgment (Fil. #24) is denied. The clerk shall schedule the matter for a one-day trial, unless the parties agree to submit all remaining issues on the written materials that have already been provided.

DATED:      April 9, 2009

BY THE COURT:

Timothy J. Mahoney
United States Bankruptcy Judge

Notice given by the Court to:
    *David G. Hicks
    T. Randall Wright
    Jon E. Blumenthal
    Stacey L. Hines
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.